IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**JAMES M. LEE,**                                    Case No. 3:17 CV 503

    Plaintiff,

    v.                                         Magistrate Judge James R. Knepp, II

**MANAGEMENT AND TRAINING CORP.,**

    Defendant.                           MEMORANDUM OPINION AND ORDER

## INTRODUCTION

This is a case brought under 42 U.S.C. § 1983 alleging violations of the Eighth and Fourteenth Amendments and Ohio state law claims of negligence. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Pending before the Court is Defendant Management and Training Corporation's Motion for Summary Judgment (Doc. 25), to which Plaintiff James M. Lee filed an Opposition (Doc. 29), and Defendant replied (Doc. 30). Defendant also moved to stay discovery pending a ruling on the summary judgment motion (Doc. 26), to which Plaintiff opposed (Doc. 29), and Defendant replied (Doc. 31). Further pending are Defendant's Motion to Strike (Doc. 36), which Plaintiff opposed (Doc. 37), and Plaintiff's Motion to Clarify (Doc. 38). For the reasons discussed below, the undersigned GRANTS Defendant's Motion for Summary Judgment. (Doc. 25).

## BACKGROUND

During all times relevant to this case, Plaintiff was an inmate at the North Central Correctional Complex ("NCCC"), which was managed by Defendant under a contract with the State of Ohio. *See* Doc. 3, at 1.

Injury and Treatment

On November 20, 2014, Plaintiff's right hand was injured in an altercation with another inmate. (Plaintiff's Affidavit, Doc. 35-1, at 1)[1]; (Disciplinary Records, Ex. D. Doc. 25-4). His hand was "slammed in a metal prison door." (Doc. 35-1, at 1). Plaintiff sought medical care by a prison nurse. *Id.* The nurse told him to apply ice and gave him ibuprofen. *Id.* Plaintiff's hand was painful and swollen. *Id.* Plaintiff had difficulty obtaining ice to apply to his hand because it was not readily available. *Id.* at 2.

Plaintiff filed a grievance on December 10, 2014 because he still had not seen a physician. (Doc. 32-2, at 1-2). Plaintiff did not see a physician until December 12, 2014. *See* Doc. 35-1, at 1; Affidavit of Daniel B. Keaton, M.D., Ex. E, Doc. 25-5, at 2. A few days later, Plaintiff's right hand was x-rayed. *See* Doc. 35-1, at 1; Ex. E, Doc. 25-5, at 2. The x-ray showed Plaintiff's hand was broken. Doc. 32-6, at 7. An orthopedic consultation was requested on December 19, 2014, and approved four days later. (Doc. 32-6, at 9). The consultation was reviewed on February 9, 2015. *Id.* Notes indicate the fracture did not appear healed. *Id.*

---

1. Defendant filed its Motion for Summary Judgment on May 22, 2018. (Doc. 25). Plaintiff filed his Opposition on June 13, 2018. (Doc. 29). His pleading included reference to eight exhibits, but there were no exhibits attached. *See id.* Five days later, on June 18, 2018, Defendant filed its Reply. (Doc. 30). That same day, Plaintiff filed a "Notice of Service of Discovery on Defendant" with ten attached exhibits. *See* Doc. 32. These exhibits appeared to include the exhibits to which Plaintiff referred in his Opposition, including, *inter alia*, *unsigned* affidavits from Plaintiff, Donato Borrillo, M.D. (Plaintiff's expert), and Attorney Horner (Plaintiff's counsel). *See* Docs. 32-1, 32-3, and 32-8. Plaintiff then filed the signed affidavits on June 19, 2018 (Attorney Horner), June 26, 2018 (Dr. Borrillo), and July 1, 2018 (Plaintiff). (Docs. 33-35). The signed affidavits from Plaintiff and Attorney Horner were identical to the unsigned versions. *Compare* Docs. 32-1 and 32-8 *with* Docs. 35-1 and 33-1, respectively. Dr. Borrillo's signed affidavit, however, differed from the previously submitted unsigned affidavit. *Compare* Doc. 32-3 *with* Doc. 34. The undersigned has considered the exhibits attached to Plaintiff's "Notice of Service of Discovery on Defendant" (Doc. 32) to the extent they contain admissible evidence, and the later filed (signed) affidavit from Plaintiff (Doc. 35) in deciding the pending motion.

Plaintiff continued to have pain in his hand, and by January 2015, was unable to spread his middle two fingers or grip anything. (Doc. 35-1, at 1).

A consultation was again requested on February 10, 2015, and an appointment scheduled for February 17. (Doc. 32-6, at 10).

Plaintiff underwent surgery on his right hand on April 1, 2015. *See* Doc. 32-6, at 14; Doc. 25-5, at 2; Doc. 34-1, at 3. May 2015 x-rays showed a partial healing fracture at the fifth metacarpal bone. (Doc. 32-6, at 17).

Plaintiff continues to have pain and difficulty using his right hand. *See* Doc. 35-1.

Court of Claims Case[2]

In April 2015, Plaintiff filed a complaint with the Ohio Court of Claims alleging improper medical treatment related to his hand. (Doc. 35-1, at 2); (Form Complaint, Ex. A, Doc. 25-1). He brought his claim against the Ohio Department of Rehabilitation and Correction ("ODRC") and Defendant. *Id.* Plaintiff asserted the improper medical treatment consisted of: 1) the delay of one month between his injury and a physician's examination, 2) a delay in receiving an x-ray after a physician's examination; 3) a lack of treatment after being informed that his hand

---

2. Plaintiff contends the documents from his Court of Claims case, attached by Defendant to its Motion, cannot be considered because they are not properly certified under Fed. R. Evid. 902(4). Federal Rule of Evidence 902(4) provides that certified copies of public records are self-authenticating. However, Rule 901 also provides that "[t]o satisfy the requirement of authenticating an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). One example of how a document may be authenticated is through "[e]vidence that . . . a document was recorded or filed in a public office as authorized by law." Fed. R. Evid. 901(b)(7). The documents to which Plaintiff objects are all file-stamped with a date and time by the Court of Claims, and Plaintiff does not assert they are false in any way. Moreover, the Court may "take judicial notice of proceedings in other courts of record." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n.5 (6th Cir. 2006) (quoting *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980)). As such, the Court may properly consider the Court of Claims documents provided by Defendant.

was broken and not healing properly; and 4) failure to provide appropriate medications for pain control. (Ex. A, Doc. 24-1, at 1-2).

The Court of Claims dismissed Defendant from the case because only state agencies and instrumentalities may be sued in that court. (Order, Ex. B, Doc. 25-2, at 1) (citing Ohio Rev. Code § 2743.02(E)).

In July 2015, the Court of Claims issued a scheduling notice, setting the case for trial at NCCC in February 2016. (Ex. G, Doc. 25-7, at 1). The following month, the court conducted a case management conference and set deadlines for disclosure of expert witnesses, discovery, and dispositive motions. (Ex. F, Doc. 25-6, at 1).

Plaintiff asserts that, at some point, the court told him he should get a lawyer, but he did not know why. (Doc. 35-1, at 2). He understood he needed an expert witness, but neither he nor his mother could afford one. *Id.* He did not write any discovery requests because he did not know what to ask for or how to write them. *Id.* Plaintiff was only permitted to review his medical records "once in a while" and was not permitted to make copies or notes. *Id.*

In December 2014, ODRC moved for summary judgment, and Plaintiff did not respond. *See* Ex. C, Doc. 25-3, at 1. With its motion, ODRC attached affidavits from a physician and a nurse, where each asserted Plaintiff's medical care was proper and medically appropriate. *Id.* at 3. In January 2015, the Court of Claims granted ODRC's motion because Plaintiff failed to provide the expert testimony required to establish a medical negligence case. *Id.* at 2-4.

The Instant Case

On March 10, 2017, Plaintiff filed the instant case. (Doc. 1). In it, he asserts state law claims of negligence and gross negligence (Count III), and constitutional claims under 42 U.S.C.

§ 1983. (Counts I & II). *Id.* at 5. These claims are based on the treatment Plaintiff received for his November 20, 2014 hand injury. *See id.* at 3-4.

**MOTION FOR SUMMARY JUDGMENT STANDARD OF REVIEW**

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* Further, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting that the court "need consider only the cited materials").

**DISCUSSION**

Defendant makes two arguments in favor of summary judgment. First, Defendant contends Plaintiff's claims are barred by the doctrine of collateral estoppel. Specifically, Defendant argues that Plaintiff's state law medical negligence claim is barred by collateral estoppel, and—because a deliberate indifference claim necessarily requires a greater showing than negligence—it is entitled to summary judgment on Plaintiff's § 1983 claims as well.

5

Plaintiff responds that his claims are not collaterally estopped. Second, Defendant contends Plaintiff's evidence does not show deliberate indifference rising to the level of an Eighth Amendment violation. Plaintiff contends he has shown a genuine issue of material fact regarding deliberate indifference. For the reasons discussed below, the undersigned finds collateral estoppel bars Plaintiff's claims, and grants summary judgment to Defendant.

Collateral Estoppel

At the outset, the undersigned notes that Defendant cites federal law standards for collateral estoppel. *See* Doc. 25, at 5-8; Doc. 29, at 3-11. Here, however, the Court has original jurisdiction over Plaintiff's § 1983 claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law medical negligence claim under 28 U.S.C. § 1367. *See* Doc. 1, at 5 (asserting state tort claims of gross negligence and negligence). "A federal court exercising supplemental jurisdiction over state law claims, in an action in which the court has subject matter jurisdiction based on federal question, is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). In applying collateral estoppel, if the prior proceeding took place in state court and the federal court has diversity jurisdiction, then state law collateral estoppel factors generally apply. *See Evans v. Pearson Enters., Inc.,* 434 F.3d 839, 849-50 (6th Cir. 2006) ("Federal courts sitting in diversity 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'") (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

Therefore, the undersigned turns to Ohio law principles of collateral estoppel.[3] Under Ohio law, "[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 113 Ohio St. 3d 59, 61 (2007) (citing *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 381 (1995)). Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action. *Fort Frye Teachers Ass'n., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St. 3d 392, 395 (1998). Where a claim could have been litigated in the previous suit, claim preclusion also bars subsequent actions on that matter. *Grava,* 73 Ohio St. 3d at 382.

Issue preclusion (or collateral estoppel), on the other hand, serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction in a previous action. *Fort Frye Teachers Ass'n,* 81 Ohio St. 3d at 395. Issue preclusion applies even if the causes of action differ. *Id.* There are thus four elements required to establish collateral estoppel:

> (1) the party against whom estoppel is sought was a party * * * to the prior action; (2) there was a final judgment on the merits in the previous action after a full and fair opportunity to litigate the fact or issue; (3) the fact or issue was admitted or actually tried and decided and was necessary to the final judgment; and (4) the fact or issue was identical to the issue involved in the new action.

---

3. The Court notes that, as a functional matter, the collateral estoppel analysis is essentially the same under either state or federal law. *See Georgia Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (listing four factors as: "(1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits*;* and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding."); *see also Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990) (collateral estoppel "precludes relitigation of issues or facts actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action").

*Mitchell v. Int'l Flavors & Fragrances, Inc.*, 179 Ohio App. 3d 365, 371 (2008). The undersigned addresses these elements below.

*Party Against Whom Estoppel is Sought*

Plaintiff here is the "party against whom estoppel is sought", *id.* at 371, and was a party to the prior action in the Ohio Court of Claims. Plaintiff emphasizes that Defendant was not a party to the Court of Claims proceeding, and was, in fact, expressly dismissed from that case. *See* Doc. 29, at 5-6; Ex. B, Doc. 25-2, at 1.

However, Ohio permits "the use of non-mutual defensive collateral estoppel when a party against whom the doctrine is asserted previously had his day in court and was permitted to fully litigate the specific issue sought to be raised in a later action." *Hoover v. Transcontinental Ins. Co.*, 2004 WL 41489, at *4 (Ohio Ct. App.).[4] That is, one who was not a party to the prior suit may assert collateral estoppel as a defense against an individual who was a party, so long as that individual had a full and fair opportunity to litigate previously. *See McAdoo v. Dallas Corp.*, 932 F.2d 522, 523 (6th Cir. 1991) ("Ohio law provides for the non-mutual application of defensive collateral estoppel where the plaintiff has had a full and fair opportunity to litigate the contested issue previously.") (citing *Goodson v. McDonough Power Equip., Inc.,* 2 Ohio St. 3d 193 (1983)).

---

4. "In addition to the Tenth District, at least seven other appellate districts (the First, Fourth, Fifth, Sixth, Eighth, Ninth, and Twelfth Districts) have interpreted *Goodson* [*v. McDonaugh Power Equip., Inc.*, 2 Ohio St. 3d 193 (1983)] as providing an exception to the requirement of mutuality when the party against whom a prior judgment is asserted had his day in court and there was permitted to fully litigate the specific issue raised in a later proceeding." *Hoover*, 2004 WL 41449, at *3 (collecting cases).

*Final Judgment on the Merits*

A grant of summary judgment such as that entered in the Ohio Court of Claims (Ex. C, Doc. 25-3) is a final judgment on the merits. *See, e.g., State ex rel. Marcum v. Florence Twp.*, 2017 WL 3098599, at *3 (Ohio Ct. App.) ("[T]here was a final judgment on the merits in [a prior case] in that the negligence action was decided on summary judgment.").

Plaintiff contends that the Court of Claims lacked "lacked jurisdiction to render any decision concerning the medical care rendered by NCCC to one of its inmates" because MTC provided the medical care at NCCC, and the Court of Claims lacked jurisdiction to hear claims against a private corporation. He cites *Garagallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658 (6th Cir. 1990). *Garagallo*, however, is distinguishable. In that case, an Ohio court had rendered a judgment "regarding federal securities laws that are within the exclusive jurisdiction of the federal courts". *Id.* at 662. The Sixth Circuit held that because such claims were exclusively within federal jurisdiction, the Ohio court lacked subject matter jurisdiction to adjudicate them. *Id.* at 663. Therefore, the Ohio judgment on that issue was not entitled to preclusive effect in a subsequent federal proceeding. *Id.* at 664 ("since the Franklin County court lacked subject matter jurisdiction to resolve the claims brought under the federal securities laws, a body of statutes and regulations over which federal courts have exclusive jurisdiction, the district court erred in dismissing Mr. Gargallo's federal securities law complaint on the ground of claim preclusion"). That is, the court will not give preclusive effect to a judgment rendered "upon a cause of action over which the adjudicating court had no subject matter jurisdiction". *Id.* Here, the question is not whether the Ohio court had jurisdiction over a federal claim—the parties do not dispute that federal courts have original jurisdiction over Plaintiff's *constitutional*

claims. The question is, rather, whether the state court had jurisdiction over the claim it decided, which was a state law medical negligence claim.

The Ohio Court of Claims has jurisdiction over cases brought against the state. *See* Ohio Rev. Code § 2743.02(E) ("The only defendant in original actions in the court of claims is the state."). Although it is true that the Court of Claims does not have jurisdiction over a claim against MTC, it did not render a decision regarding MTC; rather, it rendered a decision on a claim against ODRC, an arm of the state. *See* Ex. C, Doc. 25-3 (summary judgment entry). Plaintiff argues that because NCCC was operated by MTC under a contract with ODRC, ODRC did not directly provide Plaintiff any medical care, and thus, ODRC lacked a duty to Plaintiff. As such, Plaintiff contends, "[f]or ODRC to have prevailed on its motion for summary judgment[,] all ODRC would have had to say . . . [is] that ODRC had no duty to plaintiff due to plaintiff being incarcerated at NCCC." (Doc. 29, at 9). Plaintiff, however, cites no law for the proposition that the Court of Claims lacked jurisdiction over such a medical negligence claim against ODRC. Nor was this issue raised before the Court of Claims. And, the undersigned has found at least one Ohio appellate case suggesting that ODRC may be held liable for the actions of MTC under such a prison contract. *See Wright v. Ohio Dep't of Rehab. & Corr.*, 2014 WL 4854544 (Ohio Ct. App.). In *Wright*, the Court of Claims concluded that MTC was an independent contractor, rather than an agent, and thus ODRC was not liable for MTC's actions. *Id.* at *1. The appellate court reversed, holding there was a genuine issue of material fact over whether MTC was an agent or an independent contractor, and thus whether ODRC could be liable for MTC's actions. *Id.* at *3-4.

Plaintiff, in essence, asks this federal court to independently determine that the Ohio Court of Claims lacked jurisdiction to hear a state law negligence issue without citing any state

10

law in support of such a determination. Without such support, principles of federalism caution against a federal court determining a state court lacked jurisdiction over a state law claim. Ultimately, the Ohio Court of Claims issued a judgment on a state law medical negligence claim brought against an arm of state. This it had jurisdiction to do. Plaintiff's argument that the judgment was rendered by a court lacking jurisdiction is therefore not well-taken.

As such, the undersigned finds the "final judgment on the merits" prong met.

*Identity of Issues / Necessary to Judgment*

The identity of issues prong is met here. Plaintiff raised the same issue before the Ohio Court of Claims as he raises here. Specifically, he alleges he received medically negligent care related to his November 20, 2014 hand injury. He there cited, and here cites, the same factual bases for his negligence / deliberate indifference claims:

1. After his November 20, 2014 injury, he was told that he would see a doctor "soon" for almost one month. (Doc. 1, at 3); (Ex. A, Doc. 25-1, at 1-2).

2. On December 12, 2014, he saw a physician, but he did not receive x-rays until three days later. (Doc. 1, at 3); (Ex. A, Doc. 25-1, at 2).

3. On December 19, 2014 he was told that his right hand was broken and not healing properly. (Doc. 1, at 3); (Ex. A, Doc. 25-1, at 2).

4. Medical staff denied Plaintiff stronger medication because of the abuse of such medications by other inmates. (Doc. 1, at 3); (Ex. A, Doc. 25-1, at 2).

5. As of March 13, 2015, his hand remained broken. (Doc. 1, at 3); (Ex. A, Doc. 25-1, at 2).

As Defendant points out, Plaintiff's current case contains an additional factual allegation that he was sent to surgery at the University of Toledo Medical Center and informed that nothing further could be done. (Doc. 1, at 4). However, these facts were considered by the Ohio Court of Claims in its decision granting summary judgment to ODRC. (Ex. C, Dox. 25-3, at 3) (noting April 2015 surgery, and post-operative care). The Ohio Court of Claims expressly considered

whether the treatment Plaintiff received for his November 20, 2014 hand injury was medically negligent, and determined he failed to present sufficient evidence. This is the same claim Plaintiff presents here as his Ohio state law tort claim. *See* Doc. 1, at 2-3.

As such, the undersigned finds the identity of issues element met.

*Full and Fair Opportunity*

Therefore, whether Defendant is entitled to summary judgment on the basis of collateral estoppel turns on the fourth prong of the analysis – whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. That is, whether Plaintiff had a full and fair opportunity to litigate the issue of medical negligence before the Ohio Court of Claims. Defendant contends Plaintiff had a full and fair opportunity to litigate before the Ohio Court of Claims because: 1) he participated in a case management conference advising him of applicable dates and deadlines; 2) he was given several months in which to conduct discovery; and 3) the Court of Claims originally scheduled the trial to occur NCCC. *See* Doc. 25, at 7-8 (citing Exs. F, G, Docs. 25-6, 25-7). Defendant further contends Plaintiff's status as a *pro se* litigant does not entitle him to special treatment, and he "gives no explanation as to why he couldn't have filed something in the Court of Claims in an attempt to get past summary judgment." (Doc. 30, at 6). Plaintiff responds that he was not afforded a full and fair opportunity to litigate the claim because: 1) he was a prisoner acting *pro se*; 2) he was financially unable to hire an expert; and 3) he was only permitted to review his medical records "once in a while" (Doc. 35-1, at 2), and he was not permitted to make copies or take notes. *See* Doc. 29, at 11.

The Ohio Supreme Court has explained: "The main legal thread which runs throughout the determination of the applicability of *res judicata,* inclusive of the adjunct principle of

collateral estoppel, is the necessity of a fair opportunity to fully litigate and to be 'heard' in the due process sense." *Goodson*, 2 Ohio St. 3d at 200-01. As explained in a leading treatise:

> Today, the tendency is to allow preclusion unless the first court followed severely limited procedures or there is a clear and strong policy requiring independent redetermination by the second court. This concern with limited procedures anticipates and is often mingled with the more general proposition that lack of a full and fair opportunity to litigate may warrant denial of preclusion.

Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4423 (3d Ed.) ("Issue Preclusion—Quality of Initial Decision and Opportunity to Litigate"). Although the Court can certainly sympathize with Plaintiff's *pro se* status, and inability to afford an expert witness in the state proceedings, there is nothing to suggest Plaintiff did not have a full and fair *opportunity* to litigate his claims. The Court of Claims did not follow severely limited procedures nor act in any way to deny Plaintiff his due process right to be heard.[5]

For these reasons, the undersigned concludes Plaintiff had a "full and fair opportunity" to litigate the issue of negligence before the Ohio Court of Claims.

---

5. The undersigned notes that a plaintiff in the Ohio Court of Claims has no right to a jury trial. *See* Ohio Rev. Code § 2743.11. This might make the collateral estoppel analysis more difficult in some cases. Here, however, Plaintiff did not lose to a finder of fact in the previous case. Rather, he lost on a summary judgment motion. *See McCrory v. Children's Hospital*, 28 Ohio App. 3d 49, 53 (1986) (finding application of collateral estoppel on basis of Court of Claims case did not offend right to trial by jury when due process prerequisites to the application of collateral estoppel were present and the specific issues precluded were identical to those previously litigated); *see also Blackburn v. Springer*, 1994 WL 97001, at *4 (Ohio Ct. App.) ("In this case, we believe it is not inequitable, nor a violation of appellant's right to a jury trial, to collaterally estop appellant from relitigating the issues of his legal or equitable interest. First, the issue of appellant's equitable interest in the Oakland residence *presents a question to be determined by the court, not a jury*.") (emphasis added). Because the determination on summary judgment is a question of law and the same regardless of the right (or lack thereof) to a jury trial, the undersigned finds this is no barrier to the application of collateral estoppel to Plaintiff's claims here.

*Current Claims*

Thus, the issue of whether Plaintiff received medically negligent care for his November 20, 2014 hand injury was determined, against Plaintiff, on the merits, after a full and fair opportunity to litigate. Therefore, Plaintiff is collaterally estopped from relitigating that issue here. The negligence issue decided against Plaintiff in the Court of Claims is identical to the issue raised in Count III of the Complaint before this Court, asserting state tort claims of negligence. *See* Doc. 1, at 5.

Because Plaintiff cannot establish negligence (as he is precluded from relitigating the issue), he cannot establish deliberative indifference under the Eighth and Fourteenth Amendments, because such a claim requires a higher standard of culpability. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("deliberate indifference describes a state of mind more blameworthy than negligence"); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"); *Jones v. Muskegon Cty.*, 625 F.3d 935, 945 (6th Cir. 2010) ("Negligence in diagnosing a medical condition does not constitute unconstitutional deliberate indifference.") (quoting *Bertl v. City of Westland*, 2009 WL 247907, at *5 (6th Cir.)); *see also Broughton v. Premier Health Care Svcs., Inc.*, 656 F. App'x 54, 57 (6th Cir. 2017) ("it is well-settled that ordinary negligence or medical malpractice cannot satisfy the subjective component of deliberate indifference"); *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) ("Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error.").

As the Sixth Circuit has explained, "when granting relief on a federal claim would imply that the state-court judgment on the other issues was incorrect, federal courts do not have

jurisdiction." *Pieper v. Am. Arbitration Ass'n*, 336 F.3d 458, 460 (6th Cir. 2003). The *Pieper* court explained, "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id.* (internal quotation and citation omitted).

Because Plaintiff is collaterally estopped from relitigating the issue of medical negligence with regard to the treatment of his hand injury, and because deliberate indifference necessarily requires a greater showing than negligence, Defendant is also entitled to summary judgment on Plaintiff's constitutional claims.

## CONCLUSION

For the reasons stated above, the undersigned GRANTS Defendant's Motion for Summary Judgment. (Doc. 25). The remaining motions are DENIED as MOOT. (Docs. 26, 36, 38).

        s/James R. Knepp II
United States Magistrate Judge